CASE 41—ACTION TO RECOVER PRICE OF PERSONAL PROPERTY AND TO
ENFORCE A LIEN THEREFOR—OCT. 25.

# Robinson & Co. v. O'Brien, &c.

### APPEAL FROM HARDIN CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS—REVERSED.

CONTRACTS—ELECTION TO ABANDON COMPROMISE—MISTAKE OF ATTOR-
NEY—AMENDMENT OF PLEADINGS.

Held:   1. The buyer of machinery, claiming that some of it would
not do the work it was warranted to do, entered into a new
contract with the seller, by which that part of the machinery
was to be returned, and credit therefor entered on the purchase-
money notes, the buyer at the same time ordering new machiery
from the seller.   The seller, being informed that the buyer would
not receive the new machinery, erased the credits from the
notes, and sued on the original contract.   *Held* that, though the
action was afterwards dismissed without prejudice, the conduct
of plaintiff, unexplained, was an abandonment of the compro-
mise agreement, being inconsistent with an intention to rely
thereon.

2. In a subsequent action by plaintiff on the compromise agreement,
the averment that the credits were erased from the notes, and
the former action instituted by mistake of plaintiff's attorney.
and without the consent or knowledge of plaintiff, and that when
the mistake was discovered he dismissed the action without
prejudice, is a sufficient reply to an answer pleading an aban-
donment of the compromise.

3. It was error to refuse to permit the filing of an amended reply
averring such facts, though it was not tendered until after the
trial had begun.

S. H. BUSH FOR APPELLANT AND MARRIOTT & FAUREST FOR AP-
PELLEE.

   (No briefs in the record.)

OPINION OF THE COURT BY JUDGE HAZELRIGG—REVERSING.

In September, 1898, the appellant brought this action
against the appellees on two notes, one for $650, dated
May 22, 1896, and due November 1, 1897, and one for $495,

dated November 1, 1896, and due September 1, 1897. They were each secured by mortgage dated February 12, 1897, on a traction engine, thresher, stacker, etc. It is averred in the petition that the plaintiff—a corporation—in May, 1896, had sold and delivered to the defendants an engine, thresher, and stacker at the price of $1,950, and an old engine; that, having made some payments therefor, the defendants, in February, 1897, executed the mortgage to secure the unpaid balance, to wit, the two notes sued on; that, being dissatisfied with some of the machinery because of alleged defects, the defendants entered into a new contract on November 24, 1897, by which they agreed to return to the plaintiff the thresher and stacker, and were to be allowed the price of $740 therefor, to be credited on the old notes; that at the same time they ordered of plaintiff another thresher and stacker at the price also of $740, one-third therof to be due on October 1st of the years 1898, 1899, and 1900, respectively, and they were also to have an extension of credit on the balance of the old notes of $650 and $495, until the dates last mentioned; that by the terms of this contract all claim for loss or damage growing out of the alleged failure of the machinery to do its work properly was settled. The plaintiff further avers that while the defendants returned the old thresher and stacker as agreed in the November contract, and were given credit on the old notes,—one of them, in fact, being paid thereby,—they refused to receive the new thresher and stacker which plaintiff had prepared for them, and which they had ordered under that agreement, and that thereupon plaintiff had sold same at the best price possible, to wit, the sum of $445, and for this the defendants were entitled to credit on the notes sued on, and no more. In the first paragraph of their answer the defendants

denied information as to whether the plaintiff had prepared the machinery ordered under the November contract, or had sold it at the best price obtainable. In the second paragraph they set out, in substance, by way of counterclaim, that the two notes were executed for certain machinery which was warranted to do good work, and to be of first-class material, and that the same would not do the work it was warranted to do, and was not of first-class material; that they were thereby damaged in the sum of $2,500; that they did execute the contract of November, 1897, in order to settle the controversy as to the machinery and its work, and did return to the plaintiff the old thresher and stacker, retaining only the engine, and that the plaintiff did indorse on the two notes sued on the credit of $740 for such returned machinery, as pro. vided in the November contract, but that at this stage of the transaction they had written to the plaintiff asking it to cancel their order for the new machinery, and thereupon the plaintiff had erased the credits on the two notes, and at once, May 13, 1898, had instituted an action on them in the Hardin Circuit Court on the mortgage to secure them, without reference or regard to the contract of November, 1897, and had averred that said two notes were each wholly unpaid, and had sought judgment accordingly; that such conduct was inconsistent with an intention to rely on the November contract, and was an election on plaintiff's part to abandon the same, and rely on the original contract; that they were willing for the plaintiff to do this, and consented to it, and filed an answer and counterclaim in that suit for damages under the original con. tract, without regard to the contract of November, 1897; that, after some further steps, the plaintiff had dismissed that action without prejudice.

A demurrer to each of the paragraphs of the answer being overruled, the plaintiff filed a reply, in which it denied, in substance, that the machinery was defective, or that the defendants had been damaged. It denied the suit of May 13, 1898, was inconsistent with an intention to rely on the November contract, or was an election upon plaintiff's part to abandon that contract. It averred that it did attempt to set up the November contract in that suit in its reply, but that the defendants had objected, and that part of its reply was stricken out, and that, when plaintiff's attorney indicated that he would file the November contract in an amended petition, the court had suggested that he thought the action was prematurely brought, and thereupon the action was dismissed without prejudice. Upon the theory, we suppose, that the plaintiff had not denied the existence of the facts relied on by the defendants io show an election on the plaintiff's part to abandon the November contract, namely, the erasure of the credits on the notes and the suit on the original contract, but had only denied it had so elected,—a mere conclusion of law,—the court struck out all the averments of the reply, save in so far as an issue was presented touching the damages growing out of alleged defects in the machinery. In this condition of the pleadings, the case, on March 10, 1899, was called for trial, and, the parties announcing themselves ready, a jury was impaneled and sworn. The trial seems not to have proceeded further that day, and on the following morning the plaintiff tendered an amended reply, which, however, was not permitted to be filed. At the conclusion of the plaintiff's testimony, a second amended reply was tendered, and was filed, but on terms that it was to stand traversed of record. The

case was then tried out on the issues touching the warranty of the machinery and the damages to which the defendants laid claim. The verdict was for the defendants in the sum of $300.

On this appeal by the plaintiff, the chief complaint is that the facts set out in the second paragraph of the defendants' answer do not constitute an election on the plaintiff's part to abandon the contract of November, 1897, by which all damages were waived by the defendants, and therefore the court should have sustained the demurrer thereto filed by the plaintiff. We think otherwise. The parties to a contract may certainly abandon it. And where one of them shows unmistakably an intention to do so by setting up a different contract, and one inconsistent with the other, his adversary may agree to the abandonment, either by saying so affirmatively or by mere acquiescence. The abandonment may be implied from the conduct of the parties. Mr. Parsons thus expresses the law on this subject: "The defendant may rely on the fact that the contract has been rescinded, and this may have been done by mutual consent, or by the plaintiff, who had the right to do so, or by the defendant, if he had the right. . . . Generally, as a contract can be made only by the consent of all the contracting parties, it can be rescinded only by the consent of all. But this consent need not be expressed as an agreement. If either party, without right, claims to rescind the contract, the other party need not object, and, if he permit it to be rescinded, it will be done by mutual consent. Nor need the purpose of rescinding be expressly declared by the one party in order to give the other the right of consenting, and so rescinding. There may be many acts from which the opposite party has a right to infer that the party owing them would rescind,

and, generally, where one fails to perform his part of the contract or disables himself from performing it, the other party may treat the contract as rescinded." 2 Pars. Cont. p. 677. Here the appellees refused to accept the machinery as provided in the compromise agreement. If this afforded a sufficient ground for a rescission by the appellant, its contract in the striking of the credits from the notes, and the filing of the petition of May 13, 1898, on the original contract of May, 1896, was an exercise of that right. If the refusal to receive the new machinery did not afford sufficient ground to rescind, it is equally clear that the conduct of appellant, as indicated, was equivalent to an offer to rescind, and, when appellees consented to meet the issues presented in the first suit under the original contract, the consent of both parties to a rescission is amply shown.

We think the action of appellant in striking the credits from the notes, on being informed of appellees' determination not to receive the new machinery, and in averring in the old suit that no part of them had been paid, and suing on the first contract, was a course of conduct which, unexplained, was entirely inconsistent with an intention to rely on the second contract, and the conduct of the appellees in filing their answer meeting the issues presented was an act of acquiescence and consent that the new contract should be treated as abandoned. But the amended reply tendered by the appellant set out in clear terms that the credits were stricken off the notes and the first suit instituted by the mistake of plaintiff's attorney, and without a full knowledge of the facts, and without the consent or knowledge of the plaintiff; that the notes were received by the attorney on the 12th day of May, 1898, with the credits indorsed on them, and, by inadvertence and mis-

take, he erased the credits, and brought the suit on the following day; that, when he discovered the mistake, he dismissed the old suit without prejudice. Other facts, explaining the reason for the mistake, are pleaded, and we think the explanation is sufficient to show there was no real intention to abandon the second contract. While this pleading came somewhat late, yet, if its statements are true, the pleading should have been filed, in furtherance of justice. The refusal of the court to permit it to be filed was prejudicial to the plaintiff; indeed, it was fatal to his case. It is not necessary to notice the further conduct of the trial or the errors complained of. The judgment is reversed, for further pleadings, and for proceedings consistent with this opinion.